Excuse me, I'm not doing well today at all. Joshua Rich v. United States. And Mr. McCormick, are you ready to proceed, sir? I am, Your Honor. May it please the court, counsel. This court spends a lot of time reviewing statutes that begin with 18. And those statutes most often call for punishments in prison. They call for fines. They call for restitution. But we're now looking at a statute that has a mandate that doesn't call for such things. We're looking at 18 U.S.C. 4042. And that mandate and that duty on the BOP is to look at the safekeeping, care, and protection of prisoners. So the question that we have before us is how is that enforced? I just said we don't put anybody in prison if they don't do it. We don't fine them. We don't have any restitution. None of that. So how is that enforced? We have an enforcement situation or a procedure whereby prisoners have to enforce it with the help of the courts. And prisoners have to file grievances. And there's a whole grievance procedure with steps and steps and steps. And if they survive that grievance procedure, then what they have is the opportunity to file a claim before a court under the FTCA, the Federal Tort Claims Act. And that Federal Tort Claims Act removes the sovereign immunity that the government has so that basically tort actions can be brought. So if you get rear-ended by a postal employee driving a postal truck, you can bring an FTCA claim. But there are exceptions to that, of course. And that the problem we have and what's facing this court and other courts is how broad is that exception gonna be? Is it gonna swallow up the actual strength of 18 U.S.C. 4042 and also the FTCA? That exception, of course, is the discretionary function exception. So what's occurred in this case is different than some cases. This individual, Joshua Rich, was not in general population and he was not subject to a beating or violence or, in this case, a severe stabbing by folks in a very large setting, tough to control. He was in what's known as the SHU, S-H-U, commonly called, Special Housing Unit. That is the jail within the jail which is supposed to be a safe haven, which is supposed to be a safe place where a prisoner can go and have some idea that he might be protected. And because of that safe haven, there are certain protocols, procedures, regulations, program statements, documents, informal rules, and good old common sense on how is it we're gonna protect somebody in the SHU. And what's happened here is that obviously broke down. And a claim was brought and a very detailed complaint was put forward by Joshua Rich that statement by statement, fact by fact, described how that breakdown happened. And that breakdown had two major components to it. The first part of the breakdown was we could call separation. It is well known that in prison there are various groups that have various agendas and that they put those agendas forward in very violent ways. Mr. Rich, from the very beginning, his first time in the BOP, ran afoul of one or more of those groups. And that misstep, if you wanna call it that, that affront followed him and continues to follow him and will follow him throughout his stay in the Bureau of Prisons. What about the discretionary function exception to the Federal Tort Claims Act? What about it? Well, that- That's kind of why we're here. That's- We could talk about these facts all day long, but we're not gonna get anywhere till we get into the law of this. Justice Wynne, I appreciate your question. That DFE, if we'll call it for short, exception, is something that's supposed to apply because there are policy considerations, whether they be political, economic, and those sorts of things, that allow them to use, that is the BOP in this case, to use that as a shield and say, now you can't move forward on your claim. And it is not clear in this case what those are. There's been discussion back and forth what they might be. There's been some intimations about it, but we haven't developed the facts at this point to know what those really are, to whether or not that DFE exception can really apply. And I have argued that it doesn't apply, but frankly, I don't have all the facts either. So you're really agreeing, essentially, this is a discovery situation where you need the discovery? Absolutely need the discovery so that we can develop the merits of this case and show what procedures are there, what are mandated, what are not. And there's a lot of things that have been intimated and discussed and sort of passing, lots of briefing down below, as Your Honor knows, but we don't have the facts in our hands. You're saying this is one of those cases where jurisdiction is entwined with the merits and you can't establish one unless you have discovery to proceed on the other. It is, Your Honor. And the problem is, unlike a normal civil action, we are constrained, we don't control the facts at all. The guards are controlled by the BOP. The inmates are controlled by the BOP. The claimant himself is controlled by the BOP. He's been to three or four different institutions since I've represented him. He can be moved at their will. Witnesses can be moved at their will. All documents, films, anything that might lead us to answering the questions that are ultimately gonna be before this Court. But isn't what's required here, at least with respect to the separation, is a mandatory duty on the part of the BOP to do something? And if there is no mandatory duty, then doesn't that leave that to prison officials and their, I would say, very broad discretion? Your Honor, you're correct. There's a mandatory proponent of this and a discretionary proponent of this. What's not clear is what is mandatory and what is discretionary. The case law tells us that you can't mandate everything. You can't have it written out that you can't put a match next to gasoline or that you can't hand an inmate a shiv. Have a shiv. Have fun with that. You can't mandate everything, but there are guidelines that had to be fleshed out on what is the procedures. It is our belief that there are procedures in place that have not been developed by discovery. With respect to what? Separation or search? Both. There are procedures within databases and paper knowledge back and forth between institutions that need to be checked. There are also procedures for searching and procedures for handling inmates in the shoe on how they should be controlled, particularly with contraband such as shivs, in this case, a nine-inch knife or more. So. That goes more toward the issue of search, but I guess my point is that there seems to be a long line of cases, beginning with Calderon, that suggests, at least with respect to separation and housing of inmates, that that is something that traditionally has been within the broad discretion of the BOP and not something subject to litigation. There are a long line of cases, Your Honor, and I will tell you that look at those cases. I can't find them. There might be one or two in there, but I haven't seen them that deal with this jail within a jail shoe situation. But why wouldn't that still be subject to general discretionary considerations based on policy? Are the white supremacists more dangerous than the Asian supremacists? Are the Caucasian supremacists more dangerous than another group? Aren't these the kind of discretionary decisions that separation requires and policy decisions? Determining how dangerous a group is versus how dangerous another group is, how can this be something that's mandatory? I understand your argument with regard to the pat-down. I think that that's where you have a much better case, but as far as the separation, it seems to me that this is a classic discretionary situation. What do you do with these inmates who may all pose a problem? They have policies and procedures in place that mandate that they make security classifications and do various things to secure the institution and to do their mandate of safekeeping. So those policies and procedures tell them in a broad fashion, well, you know, we need to separate so-and-so. If we know about it, notice those sorts of things. So what we don't know in this case is what did they know and when did they know it? So for them to just take a broad shield and say, you know what, this is our discretion, bug out. Don't bother us. We run this show. That's not gonna do it because the only way to enforce this is through knowing what those facts are and for a court to look at it and either dismiss the claim then or not. And in this case, there are cases that say plain negligence, those sorts of things can't be put behind that shield. Well, why don't you get to the pat-down part of your argument? Because it looks like your time's running on you. It is running. I'd appreciate that. The pat-down part of the argument is shivs, metal knives in this case that are homemade, are a well-known threat in an institute and they are something that they have walked through like the airport and like we did this morning to come into this court, walked through metal detectors. They have wands. They have the ability to do a pat-down and they have the ability to do a strip search at the shoe when you're going in and out of the shoe. That strip search includes cavity search. Okay, what discovery would you ask for in this case to determine whether in fact the officers did perform a pat-down and whether in fact the pat-down was properly performed? Among the things I would need, Your Honor, would be the security films of watching people come and go in the shoe. Did they actually do the pat-down or did they just wave them through? Whether or not the folks were wearing metal handcuffs behind their back and thus the wand is useless. Whether or not the wand was even turned on. Whether or not the wand was operable. I thought the wanding requirement was for a return to the cell. It's not clear to me that it's just for that, Your Honor. You may be correct and I can't argue that point but I believe coming and going, sorry, coming back for sure, when they're coming back from a visit or an attorney visit or any other reason, medical, when they come back for sure, you don't want to have any contraband in this case. Your point with respect to this is that the discretion in this case was circumscribed by specific procedures that you say or contend were not followed. That's correct, Your Honor. There are other things that, to answer Justice Keenan's question further, there are notebooks kept on the hall or on the actual place where the shoe is. There are informal notes. There are all sorts of things that give people the idea of hey, we better watch out about this or that. Otherwise, if we don't look into those sorts of things and if we don't get that knowledge, it's basically a complete shield. Right, but I'm not sure you answered Judge Diaz's question fully. What are the mandatory directives that you claim were not followed here? I don't know all the directors and I don't know which ones which, to be honest with you, Your Honor. There are policy statements. There are various documents to determine which ones are mandatory and which ones aren't. It's gonna require more work. What about the visual check? Wasn't that mandatory? The visual check certainly is and the pat-down certainly is. And the question is, and these are post-wars as I understand it. So the question is, were they done at all? Were they negligently done? How did it happen? It's astounding that someone can get that kind of a weapon in that controlled an area. I think my time's nearly up. If there's another question, I thought you were gonna follow up, Your Honor. Okay. Thank you, sir. Thank you. Mr. McGonigal. Good morning. I won't belabor the point. The court's well aware that the court has established a two-pronged test when we're dealing with the discretionary function exception. The court must determine whether the conduct is a subject of a mandatory statute, regulation, policy, or some other directive requiring a specific course of action. If the conduct wasn't the subject of a mandate, then the court must determine whether the discretionary conduct that was left to the prison officials was susceptible to public policy analysis. Now it seems clear that balancing the security needs within a prison with the rights of inmates and more generally how to address security or potential security threats within a prison setting are definitely grounded in public policy. I think the case law on that is fairly clear. Indeed, cases where federal prisoners have sued under the FTCA for injuries created by fellow inmates, courts have overwhelmingly recognized and addressed, excuse me, recognized that addressing security needs and threats within a prison is rooted in public policy considerations. What are the public policy considerations, then, that are implicated by the manner in which pat-downs are conducted? Your Honor, I would submit that, and I would concede right off the bat that there was a mandatory duty in this case to conduct searches of inmates going into the recreation cage. The government acknowledges that. And to Judge Wynn's point a moment ago, and I want to circle back to it if I need to. Well, no, no, if you would please stay on track. Yes. What is the public policy that is implicated in the manner in which pat-downs are performed? There is no way that the Bureau of Prisons can set down a set of guidelines that every officer searching an inmate can follow. That would be foolproof. Correct. But I'm saying what is the public policy that is implicated in the manner in which pat-downs are performed? So security is the answer, Your Honor. So no matter how macro the level, if you say to the officer, if you direct the security officers, you have to perform a pat-down by covering the outside and the inside legs of the prisoner. Then is it discretionary whether you use all of your fingers? What I'm saying is there's going to be a point at which you're not going to be able to prescribe mandatorily. Yes, and I am. And so you're saying everything defaults to the discretionary realm once it is no longer prescribed mandatorily. Is that right? Yeah, if there isn't a specific mandate, then I would say it is discretionary. And in this case- But public policy is simply just the basket of security concerns. So that if I have not directed my security officers in how they touch the inside and the outside leg of each inmate, their policy implications of security in determining which fingers they use in doing this? I think the policy consideration is that officers who are trained and have a certain level of experience in working in units like this have to be given the discretion to decide how to pat down particular inmates. Otherwise, there would be a prescribed set of guidelines. But certain things are mandatory, though, aren't they, Mr. McGonigal? And that's what's bugging me about this case. We don't even know whether the person who had this nine-inch knife was a person who was in a category who had to be strip searched, do we? Certain people had to be strip searched based on their prior records, isn't that correct? That is correct. And that was to Judge Wynn's point earlier about what the so-called visual inspection, the visual inspection is. And so we don't even know if the person who was wielding this nine-inch knife had to be strip searched. And we don't know whether that strip search was conducted. What you're doing is, it seems to me, is you're trying to throw this plaintiff out of court before he has an opportunity to know any of the facts that will establish the jurisdiction, at least as to the pat-down. I understand your point about segregation. But the pat-down is where I think your case really breaks down. And if you can tell me why it doesn't. Well, respectfully, Judge, I understand your point, Judge Keenan. I think the answer lies in the fact that there is an obligation on the part of the plaintiff. The burden is on him. And I understand the court's point, which is that he has to be able to have some information in order to get to- How does he know what the criminal record is of the person who stabbed him? In this case, Your Honor, the government offered to the plaintiff the one set of prescriptions that we're aware of, which is the post-orders. And the post-orders do contain, essentially, three directives. Two that I think are applicable to this case, obviously, which are that a pat search and a wand search with a metal detector has to be done before they're placed in the recreation cage. The other one that you're speaking about at this point is extremely speculative. And the argument that I would make to that is, is that Mr. Rich, while he does not have access to some of the information that the folks at USP Hazleton might have had regarding certain inmates, is not without his information. He was an inmate. He was in that unit. He knew who these people were. How does he know their criminal record to see whether they qualified for a strip search? Well, he may or may not, Your Honor, and I take that point. But the... That statement there, is that a concession that discovery could be helpful to them? No, I don't think so, Judge. And the reason that I say that is that we have a statement from the guards saying that they conducted the searches, that they felt they were mandatorily required to do that. But that's not to be taken as true for jurisdictional purposes. I mean, that may well be important in terms of later proceedings, but in determining jurisdiction, their affidavits aren't, they don't... Certainly, the court can reject them. I mean, they are evidence. Affidavit says that, that we did a visual... It does not say that, Your Honor. No, ma'am, that was not my point. Doesn't even apply. So it goes back to the question I asked earlier. Aren't you effectively conceding that discovery would be a benefit here? I mean, he needs to know if one of these, if they were supposed to do it and they didn't do it, they didn't check the prior history, and all you're doing is discovery, it's not the end of the case, and you do accept that these facts are intertwined with merits and jurisdiction. So isn't discovery something that has to be done in this case? I would concede that there are instances where discovery is necessary. Obviously, that has happened in past cases. In this case, the plaintiff alleged a certain set of facts in his complaint. We, as the defendant, addressed those. The allegation was that these inmates were not properly pat-searched or wand-searched. I note that it was not even that they weren't. You know, Mr. Rich was in the unit that day. He was there, and the court pointed this out below, that Mr. Rich, being an inmate in that unit, he himself was placed in that case. He certainly knows whether he was wanted. He certainly knows whether he was pat-searched. He doesn't allege that these guards didn't do those things. He says they just didn't do it properly. And that, Your Honor, in responding to what is in the complaint. Well, we have to construe the complaint liberally at this stage, don't we? I think certainly in pro se cases you do, but in this case, Mr. Rich was represented by a very talented and able counsel. Yes, but he's entitled to the fair inferences that can be drawn, and failure to properly search might include failure because of somebody's past criminal record to strip-search, something that he wouldn't know even though he was sitting there in the cell. Respectfully, I don't think that the complaint can be read that broadly. He specifically, if memory serves, in the complaint says that they were not pat-searched or wand-searched properly. And so I don't know that he is, I don't know that he's alleged anywhere until, I believe, the reply brief at this level that there was an issue regarding potentially inmates who required a visual in-search. Isn't that a little different when you have a discretionary function of exception that you are putting forth and then you bring out? There's this discretion. And doesn't that add to this conversation? I'm sorry, Judge Wynn, I don't follow. And you're talking, that's the discretionary function. The question is whether or not this meets that exception or not, and the discovery would allow it to be outside of it, and part of the discretion is to do these things, and yet we have these mandated things that are within this policy, these same type of rules and regulations there that the subject of which could mean the discretionary function exception does not apply. So, I mean, it's not like the normal 12B6 type case where all we do is look at the complaint. You put up a defense here, and in putting up that defense, and I use the term open the door, but there's something more than just, if we only look at the complaint on it, and then in terms of your defense, you might be limited yourself. You're not so limited to that. No, no, and under 12B1, obviously the argument, the court can look at matters outside of the complaint without turning it into a motion for summary judgment. So, in an effort to put some. That's what I was going with regard to your limitation in terms of the complaint, with dealing with 12B1 type situation. Again, I went back, I just can't get away from your statement that they didn't say anything in their affidavits at all about whether they did the visual search or did the kind of search, or the prior criminal history of individuals. And that's something that if known, then it could become a part, I mean, you could amend the complaint if you find out something that you didn't know before, but you can't do it if you don't know, if you won't even let them discover the evidence. The affidavits speak for themselves, and I cannot deny that they do not contain a statement regarding visual searches. That's a good lawyer answer. They simply don't state it. Yeah, and that's how I viewed it, Your Honor, honestly, that these men, I did not create these affidavits for them. I'm very cautious to not do that in cases. That's the very point, though the very point is that's why discovery may be warranted, because you didn't create these, and you wouldn't create the affidavit because you're not the offender. You simply would be the scrivener who would write it down, but I mean, you would have to at least get that statement in there if you want to preclude that from being a basis for saying the function does not apply. Yes, and Your Honor, and honestly, I may have read too much into their affidavits, but I construed them as they conducted the searches that they, in their judgment as officers, reading the rules, understood that they had to do that. I mean, in their judgment, but their judgment is somewhat curtailed in this instance by presumably some specific requirements that they have to do. I mean, the strip search, for example, with respect to certain prisoners, there's also a reference in the record to a correctional services manual that apparently may dictate a procedure for conducting a pad search. If they're required to do certain things and they don't do them, you're not arguing that the plaintiff wouldn't have a claim in this case, are you? I'm sorry, ask that again, Judge. If they are required to conduct a pad search in a specific manner and they fail to conduct that pad search in the manner prescribed by the manual or some other directive, would the plaintiff have a claim in this case? If there's a mandate and that mandate was not complied with. How do we know that's not the case here without further discovery? I would submit that with respect to the searches that took place within the special housing unit, that the affidavits from the government's perspective contain enough information to deduce that they did what they were supposed to do that day. And I did misspeak, Judge. Well, except you've got a nine-inch knife. I mean, doesn't that sort of create a problem for the accuracy of those affidavits? That goes more to a race-sips-a-low-pitter type of argument, Your Honor. Yeah, but you're asking us to take those affidavits on their face. We did everything we were supposed to do, yet it's undisputed there's a nine-inch knife that got by. I will submit to you, Judge, that in more than a decade of handling these cases, I can tell you that despite the greatest diligence of correctional officers, that contraband moves freely within prisons. Well, but if they've exercised the greatest diligence, then they will likely prevail on the merits. And the point is that why not allow the plaintiff to get to the merits, or at least some discovery? Well, Judge, I am not in position to agree with that and say, yes, I think we should give them discovery. I think my role here as an advocate for the government is to say that discovery is an extremely burdensome task to put onto the United States. That's partially why the discretionary function exception is there. And so only in those cases where a district court looks at all of the facts and the evidence that have made it onto the record and says, I think there is an ability for the plaintiff here to develop facts which might lead to something else that might make the discretionary function exception not applicable. It's so burdensome to the government in this instance to allow this type of discovery. I mean, I know the general circumstances and surroundings here, but this man was beaten probably within a moment of his life by a group of people. And it wasn't like he hadn't talked about these threats before. And this was very real. And I'm not saying that it will bear out in the merits. I'm not saying one way or the other, but we only talk about discovery. And what is it so burdensome about this case on the government, when I've seen discovery done in cases that are, oh my God, I see box loads of stuff walking in here in all kinds of cases. What, I mean, is that what we're talking about here? Is it gonna be that difficult? Let me make three points, Judge. First, the point, the fact that the man was badly injured is not lost on me. I'm sympathetic. But make the point as to why this is so burdensome to the government that we ought to use that as a basis of saying, we just ought not allow that discovery. It's just too burdensome. Well, the government is like any other party. So it should not be accorded any special status just because it has to go through discovery. That's not the point I'm trying to make. In the prison context, in the BOP context, and Mr. McCann even brought it up himself, he'd like to see the video. There's a very big danger in releasing video from within a prison to folks outside of the prison, especially if there's any risk whatsoever that an inmate is ever going to see it. Positions of camera, how things are filmed, where those cameras are located, those are all things that inmates within an institution would absolutely love to know. In addition to that, learning all of the security policies, what guards are required to do, how they're supposed to do it, all of those things are things that the Bureau of Prisons for security reasons really doesn't like out in the general public. So if a court says to the BOP, you must engage in discovery, we'll do what we have to do. But I do think that courts ought to take that into consideration when they're making decisions as to whether or not a Bureau of Prisons, which has a significant function in protecting us. Balancing of the situation based upon what is being asked. And in this instance, Mr. Rich is simply saying that his life was in danger and he thinks his life is worth balancing to the favor of allowing this discovery because it wasn't like he was just being threatened. I mean, he was very severely beaten. I know that's not relevant in the ultimate determination, but if you're doing a balancing of it, one interest against the other, we're talking human life here. Well, it is relevant to me as a human, and I don't know that it's relevant to me in the context of the case, but I will respectfully disagree. And this was the third point I wanted to make. I just wanted to make sure that I get this out. Mr. Rich has a very colorful complaint in what he describes as his interaction with the Aryan Brotherhood. And I will submit, if you read the declaration of Terry Stiller, you will see that he has accessed the only material that matters when you're talking about separating an inmate from other individuals. The BOP, through trial and error and years of experimentation with this, has got it down right. And what they do is they have a central system that allows guards at one institution or another, wherever an inmate ends up, to know whether or not there have been any security issues, threats, or anything like that with respect to that inmate. And I think if you look through the facts as the government has laid it out, you'll see that the only time that this gentleman was in a security situation was once where he had a debt situation, not a dispute with a gang. They did take protective custody there and moved him. And the other two times where there was a bona fide security issue with him, he assaulted another inmate. It all sounds like the merits to me. It does sound like the merits. I just don't want the court to be laboring under the perception that there was this intense security risk that would have required some kind of heightened diligence by the staff. Mr. McGonigal, you could wind this up by telling us why our Kearns directive, our case of Kearns isn't squarely on point in terms of the intertwined jurisdictional and merits facts. Where in Kearns we said pretty clearly that if they're intertwined, the government counters with affidavits, then you go to discovery. And a complaint should not be dismissed without discovery. How do you get around Kearns? The only way that I can say, and the only response I had to that, Your Honor, is that I view the case more simply than that. I do not concede necessarily that the facts are intertwined in the sense that you're saying that they are. I think that the government put forth through evidence that it supplied voluntarily the mandate that these correctional officers were subject to created a mandate. It also gave discretion. And we're saying that they complied with the mandate. And as for the discretionary part, the discretionary function exception applies. I think beyond those facts, the government is saying that there is no intertwining. And I'm sure that Mr. McCann and Mr. Rich see it differently, but I do believe that the intertwining stops there. And that's the only way that I can address Kearns. All right, sir. Anything further? No, Your Honor, thank you. Thank you. Do you have rebuttal, Mr. McCann? I, probably no surprise, I do not attest to the diligence of the guards at USP Hazleton. My client certainly doesn't. I am in a learning council who have represented folks accused of such acts that have ultimately resulted in someone's death at Hazleton. This is an uncommon thing is what the government want us to believe, but it really isn't. And so this burden of looking into this is really not a burden, it's a must. It's something that should be looked into and the burden should be set aside. We do have some factual disputes and those need to be ironed out. And I think we can do that and we can get this case in a position to where either Mr. Rich proves his case or he doesn't, but at this point, we're sending a message if we don't allow that, that basically says, forget the DFE. This is really the prisoners don't matter exception because those lines of cases, it's easy to set them aside. And I'm asking this court not to do that. Thank you. All right, thank you, sir. We'll come down and agree counsel.
judges: Barbara Milano Keenan, James A. Wynn, Jr., Albert Diaz